# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-33V
UNPUBLISHED

| | |
|---|---|
| KIMBERLY SCHAUFFLER,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: April 25, 2024<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, *for Petitioner*.

*Mitchell Jones*, U.S. Department of Justice, Washington, DC, *for Respondent*.

## RULING ON ENTITLEMENT[1]

On January 4, 2021, Kimberly Schauffler filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 28, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**I.      Relevant Procedural History**

On October 18, 2022, Petitioner filed a motion for a ruling on the record and brief in support of damages, arguing that she meets the Table definition for a SIRVA and seeking $75,000.00 for damages. Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Mot."), ECF No. 33. Respondent opposed the motion on December 2, 2022, arguing that Petitioner failed to satisfy the severity requirement. Rule 4(c) Report and Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 34, at 5-6. Petitioner filed a reply on December 16, 2022. Petitioner's Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Reply"), ECF No. 37. The matter is ripe for resolution.

**II.     Petitioner's Medical Records**

Petitioner received a flu vaccine in her left shoulder on October 28, 2019. Ex. 1 at 12, 15. On November 18, 2019, she presented to her primary care provider for an annual exam and complained of left arm pain since her vaccination. Ex. 1 at 10. X-rays of Petitioner's left shoulder were taken on November 22, 2018, which were unremarkable. Ultrasound imaging on December 13, 2019, also produced normal results. Ex. 3 at 3, 4.

Several months later, on February 13, 2020, Petitioner presented to Afsana Alam, D.O., to establish care. Ex. 1 at 8. She reported that she had limited mobility and range of motion in her left shoulder that began when she received a flu vaccine. *Id.* An exam showed limited shoulder abduction, internal rotation, and external rotation. Dr. Alam also noted tenderness to palpitation and referred Petitioner to physical therapy. *Id.*

Petitioner attended her first physical therapy session on March 3, 2020. Ex. 1 at 45. She reported left shoulder pain that began "after a flu shot was given" in October of 2019. *Id.* Her pain was rated as two at best and eight at worst. *Id.* at 46. She was prescribed a home exercise program and an eight-week course of physical therapy. *Id.* at 48. However, Petitioner did not attend any additional physical therapy sessions.

On March 10, 2020, Petitioner had a virtual MD appointment for a cough that was "possibly… a very mild case of flu" but that "Covid-19 is extremely unlikely". Ex. 1 at 5. No mention of shoulder pain was made at this time, however.

There is a subsequent records gap, with Petitioner next obtaining medical treatment on September 1, 2020, from Emily Stone, P.A., and Jose Pinto, M.D., to establish care after relocating to Florida. Ex. 4 at 11. She now reported pain in her right foot following an injury and calcium deposit in her right forehead. *Id.* However, there is no

mention of shoulder pain during that visit. *Id.* Petitioner again saw P.A. Stone and Dr. Pinto on October 26, 2020, for her annual wellness visit. *Id.* at 9-10. She expressed "no acute complaints." *Id.* at 9.

On February 22, 2021, Petitioner had an initial physical therapy consultation for left shoulder pain "which began Oct. 2019." Ex. 6 at 15. She reported that she continued to experience left shoulder pain that began "after a flu shot" in October of 2019. *Id.* Additionally, she noted that her physical therapy "was stopped due to COVID," but her pain stabilized at "2-4/10 with movement and rest." *Id.* She also reported "severe" limitations with mobility and pain for two weeks. *Id.* An examination showed reduced range of motion. *Id.* Between February 22 and March 11, 2021, Petitioner attended five physical therapy sessions for left shoulder pain. Ex. 6 at 7. Petitioner returned to physical therapy and attended an additional thirteen sessions for left shoulder pain and limitations from June to December of 2021. Ex. 7 at 16.

Petitioner has submitted a sworn declaration in support of her claim. Ex. 2. Therein, she states that she received a flu vaccine on October 28, 2019, and continues to have ongoing pain, discomfort, soreness, and decreased range of motion. *Id.* at 2. She also stated that the COVID-19 pandemic "caused me to cut short my shoulder injury treatment and rehabilitation" and that she "had to relocate from New York to Florida and set up a new medical care team…." *Id.*

### III.  Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A.  Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on October 28, 2019, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through April 28, 2020 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred over approximately four months, between November of 2019 and March of 2020, followed by a significant, twelve-month gap. However, when she returned for additional treatment (albeit after the filing of this action) she specifically reported that her shoulder pain started after a flu shot in October of 2019. Ex. 6 at 15. Further, she explained that she her physical therapy was stopped "due to COVID." *Id.*

Respondent argues that Petitioner did not seek treatment for her shoulder, but the record establishes that she did attend telehealth and in-person medical visits. Opp. at 5-6. Petitioner contends that her gap in treatment was reasonable due to the COVID-19 pandemic. Additionally, the appointments cited by Respondent were for unrelated medical issues, including a foot injury and a respiratory illness. It is understandable that she would not mention her shoulder pain during these visits. I also note that the COVID-19 Pandemic began in March 2020, and is a reasonable explanation for why treatment visits may have ceased for at least some of this time.

The overall record thus constitutes a sufficient, albeit *exceedingly close,* showing of severity to meet the preponderance evidentiary standard. It is likely that Petitioner's symptoms persisted into the spring of 2020, despite the cessation of treatment and subsequent gap. However, the consistently light history of treatment and lengthy gaps in treatment also suggests a mild injury - which will likely impact damages in this case.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on November 18, 2019, stating that she had shoulder pain following her flu vaccine. Ex. 1 at 10. Thereafter, Petitioner continued to link her shoulder pain temporally to the flu vaccine. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

#### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

#### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. §

100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 28, 2019, in the United States. Ex. 1 at 15; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 2 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### IV. Damages

Petitioner requests $75,000.00 for pain and suffering. Mot. at 12-23, Reply at 7-8. I decline to decide damages at this time, and instead instruct the parties to discuss whether damages can be decided informally. However, if the parties cannot come to an agreement within 30 days, additional briefing may be ordered. Importantly, I admonish Petitioner that the current pain and suffering demand is facially excessive, given the light treatment and long gaps in seeking care. Although I was able to find on this record severity was just established, that weak overall record also means Petitioner must substantially reduce the pain and suffering demand. In my preliminary assessment, the proper sum to be awarded is likely less than *half* the demanded sum.

### Conclusion

In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.

Accordingly, the parties shall file a Joint Status Report by <u>Monday, May 27, 2024</u>, indicating whether a brief attempt at settlement discussions would be productive.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master
